## John M. Wyse, *et al. vs.* Smith and Buchanan, and John Tessier.—*June,* 1832.

The personal estate of a deceased debtor is the natural fund for the payment of his debts ; and must, in ordinary cases, be first resorted to by the creditor for the satisfaction of his claim.

If personal assets come to the hands of the executor or administrator, sufficient to pay all the debts of the deceased, the creditor must look to that fund for the payment of his debts ; and if those assets are wasted, his remedy is on the official bond of the executor or administrator.

The real estate of the debtor is protected, unless the personal assets are insufficient ; and to authorise the chancellor to pass a decree, to sell the real estate, to pay the debts of the deceased, the bill must allege an insufficiency of personal assets for that purpose, which allegation must be admitted by the answers, or proved.

Where a will directed real estate to be sold, for the support and education of the testator's children, and a part of the personal estate which ought to have been applied in payment of debts, had been expended to educate and

maintain the children, creditors might call upon a court of equity to sell the real estate, so directed to be sold, for the payment of the claims.   (*qr.*)

A personal, collateral security, given by an administrator, for a debt due by a deceased intestate, cannot operate to place the creditor in a better situation against the real estate of the deceased, than he would be without such security.

APPEAL from the Court of Chancery.

On the 15th of June, 1825, a bill was filed by the appellees, against the appellants, stating that on the 1st of June, 1811, a certain *William Wyse*, late of *Baltimore* county, deceased, was indebted to *Smith and Buchanan*, as cc-partners in trade, in the sum of $2737 48, for matters and articles properly chargeable in account. That being so indebted, the said *Wyse* departed this life in the year 1814, leaving several children, of whom some are minors, and that subsequently in the year 1820, the said *Smith and Buchanan* being indebted to *John Tessier*, in the sum of $4500, assigned him, on account thereof, their aforesaid claim against *Wyse*. That said *Wyse*, by his last will, duly executed, a copy of which is exhibited with the bill, directs, "his wife and son *John*, in case of a deficiency of his estate to support and educate his children, that his real estate, known by the name of the *Deer Park*, be disposed of, for the maintenance of said children, under their direction, and management." That *Rachel Wyse*, the widow, (now deceased,) on the 12th of April, 1814, obtained letters of administration with the will annexed, on the estate of her husband, and settled with the Orphans Court, an account of his personal estate, on the 29th of June, 1816, a copy of which is also exhibited with the bill, by which there remained in her hands a balance of $5712 34.   That on the 16th of July, 1823, and after the death of *Rachel*, letters of administration *de bonis non*, on the estate of *William Wyse*, were granted to *Joseph Allender*, who returned an inventory of the estate, which came to his hands, (a copy of which is exhibited,) amounting to $2293; and the complainants allege, that they have understood, and believe, that the difference between the balance appearing to be due the

estate by the account of *Rachel Wyse*, and the inventory returned by *Allender*, was expended, in the maintenance, support and education, of the children of *William Wyse*. That some time after his death, his widow and son, petitioned for a decree, for the sale of his real estate, and on the 1st day of October, 1826, a decree for that purpose was obtained, which yet remains unexecuted. That petition, and proceedings upon it, are exhibited with the present bill. That *Rachel* the administratrix, always acknowledged the validity of the aforesaid claim, and being unable to pay the amount thereof in cash, she gave to the complainant *Tessier*, her bond, with *John M. Wyse* as her security, dated on or about the 22d of January, 1820, payable one year after date, conditioned for payment of $4325, being the amount of principal and interest then due, with the distinct understanding however, that the estate of *Wyse*, was not thereby to be in any way discharged from its liability for said claim. That said bond not having been paid when due, suit was brought thereon, and judgment confessed, but owing to the loss of the cause of action, the judgment never could be extended, or rendered available. That on or about the 16th of May, 1822, *William A. Wyse*, one of the sons of *Wm. Wyse*, being indebted to one *George Riston*, in the sum of $2000, for the purpose of securing the same, united with *Rachel*, the widow, *John M.* and *Eliza Wyse*, the children of *Wm. Wyse*, in a mortgage to *Riston*, of all their interests in the real and personal estate of the said *William*, an office copy of which mortgage is exhibited. *Prayer*, that the mortgage to *Riston* be set aside, and that the defendants, the children of *Wyse*, *Riston* and *Allender*, or such as may be liable therefor, be decreed to pay complainant's claim, or in default thereof, that the real and personal estate of said *Wyse*, be sold for that purpose, and for general relief.

The petition of *Rachel*, and *John M. Wyse*, for the sale of the estate of *William*, which is referred to in the bill, states, that the said *William*, by his will duly executed, di-

Vol. IV.—38

rected that his lands in *Baltimore* county, called *Deer Park*, should be sold under the directions of the petitioners, for the maintenance and education of the testator's children, in case his personal estate should not be sufficient for that purpose. That the personal estate amounted to the sum of $7005 25, and that the administratrix has disbursed of that sum $1292 91, and that there is a claim now due *Smith and Buchanan*, amounting to the sum of $     That out of the balance of the personal estate, there is to be deducted a commission to the administratrix, and her third as widow; leaving the other two-thirds for the support of the children, for which it is wholly inadequate, and that their interests and necessities required that the land called *Deer Park*, should be sold, and the petition therefore prays, that trustees be appointed to sell the same. *Kilty* (Chancellor,) on the 1st of October, 1816, passed a decree for the sale of the said land, and appointed the petitioners trustees to make the sale.

The answer of *George Riston*, admitted the death of *Wyse*, as stated in the bill, having first made the will, a copy of which is exhibited, and that his widow administered on, and took possession of his personal estate. That *Tessier*, one of the complainants, having presented to the said administratrix, whatever claim he had against her testator, she together with *John M. Wyse*, as her security, gave him their bond for the amount thereof, which this defendant has been informed, and believes, was accepted, in full discharge of his *(Tessier's)* claim against the estate. The defendant admitted the execution of the mortgage to him, as stated in the bill, and alleged the entire consideration therein stated, to be still unpaid. He insists that the whole of the property contained in the inventory returned by *Allender*, the administrator *de bonis non*, is comprehended in the mortgage to him; he does not admit, that the difference between the amount of that inventory, and the balance appearing to be in the hands of *Rachel*, the first administratrix, by the account exhibited by the complainants, was expended

in supporting and educating the children of *William Wyse,* but supposes that the profits of the land and houses, were appropriated for that purpose.

The answer of *John M. Wyse,* admits the debt from *William Wyse* his father, to *Smith and Buchanan,* as the bill charges, and the execution of the bond by *Rachel,* the administratrix, and himself to *Tessier,* for the principal and interest of the said claim. That said bond was intended by the obligors, and received by *Tessier,* in full discharge of the account of *Smith and Buchanan,* against the estate, and that *Tessier,* in pursuance of such understanding, delivered him said account with a receipt thereon, to be by him handed over to the administratrix. This defendant admits, that *William Wyse* died seized of the real estate, mentioned in the bill, and that after his death an application was made for a decree to sell a part thereof. That about sixty acres were accordingly sold, and the proceeds appropriated to the benefit of the testator's children.

The answer of *Eliza Wyse, Margaretta Wyse, Wm. A. Wyse,* and the minors, *Edward, Nicholas, Matilda,* and *Francis Wyse,* say that they have no knowledge of the debt due from their father to *Smith and Buchanan.* They believe their father died seized of the lands mentioned in the bill, having first made his will, a copy of which is exhibited. The defendants, *Eliza, Margaretta Wyse,* and *Wm. A. Wyse,* do not admit, but deny that *Smith and Buchanan,* assigned their claim, whatever it may be, to *Tessier,* or that the latter has now, or ever had any claim upon the real estate which descended from their father to them. They believe that a portion of said real estate was sold under the decree mentioned in the bill, and that the proceeds, or a part thereof, was appropriated to the maintenance and education of themselves, and the other children of *William Wyse.*

The answer of *Allender* contains nothing material. A commission issued, under which proof was taken, and returned, establishing the validity of the claim of *Smith and*

*Buchanan,* against *William Wyse* as stated in the bill, and that said claim was assigned by them, verbally, or in writing to *John Tessier,* in discharge of a debt to a larger amount due from *Smith and Buchanan* to him.

There was no evidence of a deficiency of the personal estate of the deceased to pay the debt, or that any portion of the personal estate had been applied to the support and education of his children.

The account of *Smith and Buchanan* against *Wyse,* was proved to have a receipt on it, and to have been allowed the administratrix in her settlement with the Orphans Court. The money however was not paid in fact.

BLAND, (Chancellor,) July term, 1830, decreed that *Allender,* the administrator *de bonis non,* should account for the personal estate of the deceased, and that his real estate should be sold for the payment of his debts, and appointed a trustee for that purpose.

From this decree the defendants appealed to the Court of Appeals.

The case was argued before MARTIN, ARCHER, and DORSEY, J.

*A. C. Magruder* and *Gwynn* for the appellants, contended,
1. That there were personal assets to pay the claim, and therefore, the real estate was not liable. 2. That the bill does not aver a deficiency of the personality, and is consequently defective. *Hoye vs. Brewer and Troup,* 3 *Gill and Johns.* 153. 2. If the complainants ever had a claim as against the real estate, they had lost it, by taking the bond of the administratrix with security, and giving her such a receipt, as enabled her to get a credit for the amount in the Orphans Court. 4. The complainants have forfeited their remedy against the real estate, (if they ever had any) by delaying to proceed, until the bond of the administratrix became barred by limitations. If they had prosecuted their claim against the administrators in due season, satisfaction might have been had out of the personality, which originally was

amply sufficient for that purpose ; having failed to do so, and allowed the administrators to waste the assets, and precluded a recovery on their bond, it would be unjust, especially as regards the infant heirs, to charge the real estate, when the creditor by his negligence, has permitted the fund primarily liable to him, to be placed not only beyond his reach, but beyond the reach of the heirs, if they should be made to pay the claim. They cited, 1 *Chitty Eq. Dig.* 277. *Thompson vs. Tappen,* 5 *Johns. Ch. Rep.* 518.

*Scott,* and *Johnson,* for the appellees.

Upon the death of *Wm. Wyse,* there was due from him to *Smith and Buchanan* upwards of $2000, and from the latter to *John Tessier,* upwards of $3000, no part of which has been paid, notwithstanding the receipt, and allowance of the account by the Orphans Court. The receipt was given merely to enable the administratrix to get a credit in the Orphans Court, as is manifest from the evidence. *Tessier* in taking the bond, did not mean to discharge the estate, his object being to liquidate the claim, and to superadd to his security the personal responsibility of the obligors. The bill distinctly alleges the fact, that the bond was taken as cumulative security, and it is denied by only one of the defendants. To show that a creditor does not lose his remedy against the deceased's estate by taking the note of his administrator, they referred to *Glenn vs. Smith,* 2 *Gill and Johns.* 493. It can make *no* difference in this case, that a bond was taken for a simple contract debt, because it was the bond of the administratrix, to whose bond as such, this creditor had a right to resort ; it is the case therefore of bond for bond. They insisted, that as the inventory of *Allender,* the administrator *de bonis non,* showed a deficiency of the personal estate, the whole real estate was liable to be sold, to make up that deficiency : but if the whole was not liable at all events, that portion of the realty was, which descended to the obligors in the bond.

MARTIN, J., delivered the opinion of the court.

The bill in this case was filed to obtain a decree for the sale of the real and personal estate of *William Wyse*, deceased, to pay a debt originally due to *Smith and Buchanan*, and alleged to have been assigned by them to *John Tessier*.

The chancellor has not stated the grounds upon which he founded this decree, and upon a careful examination of the record, we cannot think the complainants are entitled to it.

The personal estate of a deceased debtor, is the natural fund for the payment of his debts, and must *in ordinary cases*, be first resorted to, by the creditor for the satisfaction of his claim.

If personal assets come to the hands of the executor, or administrator, sufficient to pay *all* the debts of the deceased, the creditor must look to that fund for the payment of his debts, and if those assets are wasted, his remedy is on the official bond of the executor, or administrator. The real estate of the debtor is protected unless the personal assets are insufficient, and to authorise the chancellor to pass a decree to sell the real estate to pay the debts of the deceased, the bill must allege an insufficiency of personal assets for that purpose, and must sustain that allegation by proof, or the admission of the opposite party. See Act of 1785, *ch.* 72. We cannot therefore sustain this decree under the act of 1785, because the bill does not allege an insufficiency of personal assets to pay the debts, and if alleged, the complainants by their own showing, disprove the allegation. By exhibit E, *filed by the complainants*, it appears that *Rachel Wyse*, the administratrix with the will annexed, of *William Wyse*, had on the 29th of June, 1816, a balance in her hands of $5712 34, and the only debt then due from the estate, (so far as can be collected from this record,) was the one now in controversy, to *Smith and Buchanan*, which *then* amounted to but little more than one half of that sum.

It is stated in the bill that it is directed by the will of

*William Wyse,* that a part of his real estate called *Deer Park,* should be disposed of for the maintenance of his children, if the personal estate should be insufficient for that purpose, and that the difference in the amount of assets, admitted to have been in the hands of the administratrix, on the 29th of June, 1816, and that returned by the administrator *de bonis non,* in the 23d January, 1824, was produced by applying the money to the education and maintenance of the children, and that a decree was obtained to sell *Deer Park* for the purposes of the will, but that it remains unexecuted.

If a part of the personal assets which ought to have been applied to the payment of this debt, had been expended to educate and maintain the children, to save the real estate, it would have merited the serious consideration of this court, but although such is the allegation in the bill, it is not admitted by any of the answers, and there is no attempt on the part of the complainants to sustain it. *George Riston* in his answer says, "he does not and cannot admit, that the difference between the balance of *Rachel Wyse's* administration account, and the assets returned by *Joseph Allender,* was expended in maintaining, supporting, or educating said children, but supposes and believes, that the profits of the farms, and rent of the houses in town, were appropriated for that purpose." The other answers are silent as to the manner in which the assets have been expended, but state, that part of the real estate had been sold, and the proceeds of the sale applied to the maintenance, and education of the children. *Eliza* and *Margaretta Wyse* say, "they have been informed, and believe that a part of the real estate of their father, was sold after his death, by virtue of the decree mentioned by the complainants, and the proceeds of such sale, or a part thereof, was applied to the maintenance and education of these defendants, and the other children of *William Wyse,* deceased." *John M. Wyse* says, "a part of the land decreed to be sold, about 70 acres, was sold, and the money arising therefrom, was appropriated to the benefit of the children of *William Wyse,* deceased."

The answer of *William A. Wyse,* asserts the same facts. This allegation then, not being admitted by any of the defendants, and denied by one, it was incumbent on the complainants to sustain it by proof, and we have looked in vain to this record for such proof.   The only evidence that looks to this question produced by the complainants, is the petition of *Rachel,* and *John M. Wyse,* to obtain a decree for the sale of *Deer Park,* under the will of *William Wyse,* which so far from sustaining the idea, that the personal assets had been expended by her in maintaining the children, that she repels it, by stating how a part of those assets had been expended, and the manner the balance was to be appropriated—that she had already paid $1292 91—that there was a claim amounting to $          due to *Smith and Buchanan,* and that out of the balance then due to the estate, was to be deducted her commissions, and her third part as widow of the deceased, leaving two-thirds of the net balance for the support of the children of *William Wyse.*   We therefore think the complainants have not shown themselves entitled to a decree, for the sale of the real estate of *William Wyse,* to discharge the claim set out in this record.

With this view of the case, the court deem it unnecessary to inquire, whether the alleged assignment, by *Smith and Buchanan,* of their claim to *Tessier* was proved, or what was the legal effect of the bond passed by *Rachel Wyse,* and *John M. Wyse,* to him.

If this bond did not extinguish the debt, as against the estate of *William Wyse,* (of which we do not intend to give an opinion,) it certainly could not give *Tessier* any claim against the real estate of the deceased, that he did not before possess.   A personal collateral secury, given by the administratrix, for a debt due by the deceased testator, cannot operate to place a creditor in a better situation against the real estate of the deceased, than he was in without such security.

DECREE REVERSED, AND BILL DISMISSED WITH COSTS.